<u>NOT FOR PUBLICATION</u>

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| AVROHOM POLLAK, individually and on behalf of all others similarly situated, | : : : : |
| Plaintiff, | : Civil Action No. 15-6046-BRM-DEA : |
| v. | : : |
| FIRSTSOURCE ADVANTAGE, LLC, | : : **OPINION** |
| Defendant. | : : |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Firstsource Advantage, LLC's ("Firstsource" or "Defendant") Motion to Dismiss the Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 33.) Plaintiff Avrohom Pollak ("Plaintiff") opposes this motion. (ECF No. 37.) Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. For the reasons set forth below, Defendant's motion is **DENIED**.

### I.  BACKGROUND[1]

#### A.  FACTUAL BACKGROUND

Plaintiff is a New Jersey resident who opened an American Express credit card account ending in 1006 (the "Account"). (ECF No. 32 at ¶¶ 11, 20-21; *see also id.* at Exs. A-B.) Firstsource is a debt collection agency with its principal place of business in New York. (*Id.* at ¶¶ 12, 16.) The Complaint alleges Firstsource, at all relevant times, "acted as a third-party debt collector

---

[1] The facts set forth in this Opinion are taken from Plaintiff's Amended Complaint (ECF No. 32), the parties' briefs and related filings.

1

collecting, or attempting to collect, debts owed or alleged to be owed to another" and was neither "an employee or officer of American Express" nor "related by common ownership or affiliated by corporate control with American Express." (*Id.* at ¶¶ 16, 18-19.)

Sometime prior to March 18, 2015, Plaintiff allegedly incurred a debt on the Account. (ECF No. 32 at ¶ 20.) "After the alleged debt had been in default for over a year, the debt was placed with Defendant, for the sole purpose of debt collection, between October 15, 2014 and the present time." (*Id.* at ¶ 23.)

"On October 15, 2014, Defendant mailed a debt collection letter on its letterhead to Plaintiff" (the "October Collection Letter"). (ECF No. 32 at ¶ 24; *see also id.* at Ex. A.) The October Collection Letter requested that Plaintiff send the total amount due on the Account to Firstsource at 205 Bryant Woods South, Amherst, New York 14228 and invited Plaintiff to call Firstsource at 1-877-420-5095 to discuss various payment options. The October Collection Letter also states "This is a communication from a debt collector. This is an attempt to collect a debt and any information will be used for that purpose." (*Id.* at Ex. A.)

Several months later, on February 17, 2015 and March 18, 2015, respectively, Plaintiff received two additional letters relating to the Account (the "Settlement Offer Letters"). (ECF No. 32 at ¶ 20; *see also id.* at Ex. B.) The Settlement Offer Letters "each offered the Plaintiff to resolve his account for sixty percent (60%) of his balance" but stated "In order to accept this offer, please call American Express at 1-877-443-0144." (*Id.* at ¶ 31.) Both of the Settlement Offer Letters are on American Express letterhead, "display the distinctive square shaped American Express logo and even display[] an encircled 'R' to denote the use of a registered trademark" on both the letters themselves and the detachable payment stubs. (*Id.* at ¶¶ 26-27.) The Settlement Offer Letters are also signed "Sincerely, American Express Global Collections." (*Id.* at ¶ 29.) Plaintiff alleges these

"numerous and explicit references to 'American Express' are meant to instill in the recipient that the [Settlement Offer Letters were] actually created and sent by the alleged original creditor, American Express." (*Id.* at ¶ 30.) However, Plaintiff alleges the Settlement Offer Letters were, in fact, "sent by Defendant, a third-party debt collector, who sent the [Settlement Offer] Letter[s] as American Express in an effort to evade compliance with state and federal debt collection laws." (*Id.* at ¶ 25, 30.) Unlike the October Collection Letter, the Settlement Offer Letters do not bear Firstsource's name, nor do they state they are being sent by a debt collector and that any information obtained would be used for purposes of attempting to collect a debt. (*See id.* at Ex. B.)

Plaintiff alleges that, when calling the phone number identified in the Settlement Offer Letters, "1-877-443-0144, the Plaintiff and any other caller are greeted by an individual identifying themselves as a representative of American Express." (ECF No. 32 at ¶ 33.) However, Plaintiff alleges, "[u]pon information and belief, individuals . . . calling the phone number of 1-877-443-0144 are in fact speaking to representatives and employees of the Defendant, and have no employment or affiliation with American Express." (*Id.* at ¶ 35.) In fact, Plaintiff claims his "counsel called American Express directly, [and] American Express advised that the phone number of 1-877-443-0144 actually belonged to Defendant." (*Id.* at ¶ 36.)

The gravamen of Plaintiff's Complaint is that Firstsource "intentionally masquerades as American Express and use[d] [American Express's] logo on [the Settlement Offer] Letters to deceive Plaintiff . . . into believing: (i) that the [Settlement Offer] Letters were prepared and sent by American Express; (ii) that American Express can be reached at the addresses on the [Settlement Offer] Letters; (iii) that any payment sent to those addresses would be received by American Express; (iv) that any call to 1-877-443-0144 would connect the caller with a representative of American Express; and (v) that American Express was attempting to collect the

3

debt referenced therein rather than a third-party debt collector." (ECF No. 32 at ¶ 37.) Through this conduct, Plaintiff alleges Firstsource violated numerous provisions of the Fair Debt Collection Practices Act, 15 U.S.C. 1692, *et seq*. (the "FDCPA"). Plaintiff purports to assert his claims on his own behalf, and on behalf of a putative class and sub-class of New Jersey residents who received the same or similar letters or other written communications. (*Id*. at ¶¶ 43-44.)

Firstsource now moves to dismiss Plaintiff's Amended Complaint in its entirety, pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 33.) Plaintiff opposes the motion. (ECF No. 37.)

## II.   LEGAL STANDARD

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more

4

than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DECISION

Firstsource argues the "only plausible interpretation of the Settlement Offer Letters, based on the facts alleged and the letters themselves, is that they were an effort by American Express to obtain at least a partial payment of the amount owed to it, rather than an independent effort by Firstsource to collect the debt." (ECF No. 33 at 5.) Firstsource contends "the FDCPA generally prohibits the use of a debt collector's name on correspondence sent by or on behalf of the creditor, not the other way around." (*Id*. at 5-6 (citing *Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725 (7th Cir. 2004)) (additional citations omitted).) Thus, Firstsource argues Plaintiff's allegation that it merely used the American Express name and logo to evade compliance with the FDCPA is not plausible and should be rejected. (*Id*. at 6.)

Firstsource next argues Plaintiff's claims should be dismissed because Plaintiff does not allege Firstsource made any material misrepresentation. According to Firstsource, "[e]ven if there were a 'misrepresentation' as to whether American Express or Firstource mailed the Settlement Offer Letters . . . or an omission of information allegedly required under [the FDCPA], it would

5

not be material and thus not actionable under the FDCPA" because Plaintiff's Complaint does not "articulate any different action he might have chosen had the Settlement Offer Letters more fully described Firstsource's alleged involvement. (*Id.* at 8 (citing *Donohue v. Quick Collect, Inc.*, 592 F.3d a1027, 1034 (9th Cir. 2010)).) Firstsource contends the allegation that the Settlement Offer Letters "'created the risk that the Plaintiff may pay a debt he may not have otherwise chosen to pay,' is entirely insufficient to establish materiality." (*Id.* (internal marks and citations omitted))

In opposition, Plaintiff maintains Firstsource "violated the FDCPA when it mailed two Collection Letters to the Plaintiff on American Express letterhead, without disclosing that these communications were actually from [Firstsource], a third-party collection agency." (ECF No. 37 at 5.) Plaintiff argues Firstsource violated several provisions of the FDCPA "by (1) masquerading as American Express in its communications with the Plaintiff, and in (2) failing to include the disclosures required by Section 1692e(11)." (*Id.*) According to Plaintiff, even if Firstsource's misrepresentations were not "material," there is no materiality requirement for claims under Section 1692e(11). (*Id.* at 6.) Nonetheless, Plaintiff argues Firstsource's omission of the disclosures required by Section 1692e(11) were, in fact, material, despite that the statute contains no such requirement. (*Id.* at 6-10.) Plaintiff further argues Section 1692e(14) "expressly applies to debt collectors who seek to skirt the FDCPA's strictures by posing as the original creditor who are [sic] not governed by the FDCPA." (*Id.* at 10.) Plaintiff contends he "is not complaining of a mere 'technicality' which could have no possible impact on the debtor's rights or decision-making process." (*Id.* at 12 (citations omitted).) To the contrary, Plaintiff contends Firstsource "falsely represented that it was American Express (Plaintiff's original creditor) rather than a third-party collection agency" which "allowed [Firstsource] to completely disregard any of the requirements of the FDCPA." (*Id.*) This conduct, according to Plaintiff, "not only has an impact on the Plaintiff's

6

rights under the FDCPA, but it can also impact a consumer's decision to pay her debt." (*Id*.) In short, Plaintiff argues "[i]t is clear that a collection agency's misuse of the original creditor's name and letterhead to circumvent the requirements of the FDCPA is a material violation of the statute." (*Id*. at 14.)

Congress enacted the FDCPA as a result of the "abundance evidence of the use of abusive, deceptive, and unfair debt collection practices" and the inadequacy of existing laws and procedures designed to protect consumers. 15 U.S.C. § 1692(b). The stated purpose of the FDCPA was "to eliminate abusive debt collection practices by debt collectors" and to promote further action to protect consumers against debt collection abuses. *Kaymark v. Bank of America, N.A.*, 783 F.3d 168, 174 (3d Cir. 2015) (quoting 15 U.S.C. § 1692(e)). "The right congress sought to protect in enacting this legislation was therefore not merely procedural, but substantive and of great importance." *Blaha v. First National Collection Bureau*, 16-cv-2791 (D.N.J. Nov. 10, 2016) Slip Op., at *16.

Typically, "[t]o prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F. 3d 299, 303 (3d Cir. 2014); *see also Jensen v. Pressler & Pressler*, 791 F. 3d 413, 417 (3d Cir. 2015).

The first three requirements are not in dispute. Plaintiff is a consumer, Firstsource is a debt collector, and Firstsource's challenged practice involves an attempt to collect a "debt." Additionally, Plaintiff alleges the Settlement Offer Letters "creat[ed] the risk that the Plaintiff may pay a debt he may not have otherwise chosen to pay." (ECF No. 32 at ¶ 41.) Thus, the harm claimed by Plaintiff is precisely that which the FDCPA was intended to guard against. *See Blaha,* Slip.

Op., at *16 (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982)) (rejecting defendant's "argument that Plaintiff has alleged a bare procedural violation that does not give rise to an injury-in-fact.").

In the Amended Complaint, Plaintiff alleges Firstsource violated various provisions of the FDCPA, including: Section 1692e (making any "false, deceptive, or misleading representation"); Section 1692e(9) ("use or distribution of any written communication . . . which creates a false impression as to its source, authorization, or approval"); Section 1692e(10) ("use of any false representation or deceptive means to collect or attempt to collect any debt"); and Section 1692e(14) ("use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization"). (ECF No. 32 at ¶ 38.) Additionally, Plaintiff alleges the Settlement Offer Letters violated 15 U.S.C. § 1692e(11) by failing to disclose that each communication was an attempt to collect a debt by a debt collector and that any information would be used for that purpose. (*Id*. at ¶¶ 39-40.) These are "not just conclusory statements or a recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557). When viewed in the light most favorable to Plaintiff, the Amended Complaint contains sufficient factual enhancements – namely, the October Collection Letter and Settlement Offer Letters – "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Nonetheless, Firstsource contends Plaintiff's allegation that it "used the American Express name and logo to evade compliance with federal debt collection laws is not plausible and should be rejected." (ECF No. 33 at 6.) But Firstsource fails to explain why Plaintiff's allegations are "not plausible." Instead, Firstsource simply denies Plaintiff's version of the facts. On a motion to dismiss, however, a district court is "required to accept as true all factual allegations in the

8

complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228.

Additionally, the Court is also not persuaded by Firstsource's contention that "[e]ven if there were a 'misrepresentation' as to whether American Express or Firstsource mailed the Settlement Offer Letters . . . or an omission of information allegedly required under § 1692e(11), it would not be material and thus not actionable under the FDCPA." Indeed, if these alleged misrepresentations and omissions were not actionable, Congress would not have enacted a statute specifically prohibiting this exact conduct. *See* 15 U.S.C. §§ 1692e(9) – (11), (14).

As Firstsource acknowledges, "the FDCPA *broadly* prohibits debt collectors from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" (ECF No. 33 at 6 (citing 15 U.S.C. § 1692e).) The Third Circuit "has repeatedly held that '[a]s a remedial legislation, the FDCPA must be broadly construed in order to give full effect to these stated purposes,' and, as such, [courts must] analyze the communication giving rise to the FDCPA claim 'from the perspective of the least sophisticated debtor.'" *Kaymark*, 783 F.3d at 174 (quoting *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013) and *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)). "This standard is less demanding than one that inquires whether a particular debt collection communication would mislead or deceive a reasonable debtor." *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 298 (3d Cir. 2008) (citing *Rosenau*, 539 F.3d at 222).

As alleged in the Amended Complaint, Firstsource's communications "deceive[d] Plaintiff, and similarly situated consumers, into believing: (i) that the [Settlement Offer] Letters were prepared and sent by American Express; (ii) that American Express can be reached at the addresses on the [Settlement Offer] Letters; (iii) that any payment sent to those addresses would

9

be received by American Express; (iv) that any call to 1-877-443-0144 would connect the caller with a representative of American Express; and (v) that American Express was attempting to collect the debt referenced therein rather than a third-party debt collector." (ECF No. 32 at ¶ 37.) Accepting Plaintiff's allegations as true, the Court finds these alleged misrepresentations and omissions would be likely to deceive or mislead the least sophisticated debtor. Accordingly, Firstsource's Motion to Dismiss is **DENIED**.

### IV. CONCLUSION

For the reasons set forth above, Firstsource's Motion to Dismiss (ECF No. 33) is **DENIED**. An appropriate Order will follow.

**Date: March 16, 2017**                    */s/ Brian R. Martinotti*  
　　　　　　　　　　　　　　　　　　　　　　　**HON. BRIAN R. MARTINOTTI**  
　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**